**Myron J. AUFIERO, Plaintiff,**

v.

**Owen CLARKE et al., Defendants.**

**Civ. A. No. 77-2010-S.**

United States District Court, D. Massachusetts.

April 11, 1980.

F. J. McDonald, Malden, Mass., for plaintiff.

John F. Hurley, Asst. Atty. Gen., Boston, Mass., for defendants.

## FINDINGS, RULINGS AND ORDER FOR JUDGMENT

SKINNER, District Judge.

This action was brought by Myron Aufiero, a former Bureau Chief in the Department of Corporations and Taxation [1] of the Commonwealth of Massachusetts (the Department), alleging the deprivation of his constitutional rights because of his demotion by the defendants Clarke and Dukakis. He claims he was demoted because of his membership in the Republican Party. He alleges jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. §§ 1981 through 1985 inclusive. No racial animus is alleged. The only applicable substantive statute is 42 U.S.C. § 1983. So much of the complaint as purports to state claims under 42 U.S.C. §§ 1981, 1982, 1984 and 1985 is DISMISSED. The complaint, even as amended, states that the plaintiff's rights under the Constitution are found in Amendments IV, V, VII and XIV, Section 1. Plaintiff's attorney has made no attempt to demonstrate the application of Amendments IV, V and VII, and I can perceive none. He relies in argument on *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), a case based on the First Amendment, which is not mentioned in the Complaint, except inferentially by reference to Amendment XIV, Section 1. This case has been tried and argued on the basis of *Elrod v. Burns, su-*

pra, and I shall treat the complaint as minimally sufficient to raise the issues presented by that case.

No evidence was presented which would warrant a finding against the defendant Dukakis, and the action was dismissed as to him at the close of the plaintiff's case.

The case was tried to the court without a jury.

## FINDINGS OF FACT

A. *Historical Summary*

Aufiero never finished high school, but at some time sufficiently completed his studies to acquire a High School Equivalency Certificate. Before joining the Department he had operated a delicatessen. He joined the Department as a provisional sales tax examiner in April 1966. In 1970 he became active in the gubernatorial campaign of Governor Sargent, who was elected in that year. During the campaign he became friendly with Harold Greene, who subsequently served as Governor Sargent's patronage secretary. Aufiero became Greene's advisor on appointments with the Department.[2] In 1970 Greene secured for him the position of supervisor in the Sales Tax Bureau. In 1972, working through the Governor's appointment secretary, Greene secured for the plaintiff the position of Chief of Bureau, Bureau of District Offices, the position from which he was later discharged. In 1973, the Governor's appointment secretary called the then Commissioner of Corporations and Taxation, Nicholas Metaxas, and told him to appoint Greene to the then vacant post of Chief of Bureau, Bureau of Excise Taxes. Mataxas protested, but eventually did as he was told.

Aufiero also proselytized for the Governor within the Department. For instance, one Capuano testified that although he was an independent, i. e., not a registered member of either party, he attended Sargent's fund raisers at the urging of Aufiero. He

---

**1.** Now renamed the Department of Revenue.

**2.** These appointments were nominally made by the Commissioner, but there appears to have

been a practice to consider them as within the Governor's patronage preserve.

was appointed the Chief of the Income Tax Bureau during the Sargent administration on the recommendation of Greene. He was not discharged by Clarke and eventually retired in due course.

Sargent was defeated for reelection in 1974, and was succeeded by the defendant Dukakis. The position of Commissioner is a gubernatorial appointment. On July 10, 1975, Dukakis replaced Metaxas with the defendant Owen Clarke, who had been Deputy Commissioner under Metaxas. Metaxas remained with the Department and is presently a Deputy Commissioner. Dukakis told Clarke that he did not want to have any more patronage appointees in the Department and authorized Clarke to remove any patronage appointee who was not qualified. Greene's appointment was mentioned as being an example of the type of appointment Dukakis did not wish to see repeated.

On the following day, July 11, 1975, Clarke removed Aufiero as Bureau Chief and shortly thereafter reinstated him as a supervisory tax examiner.

The following Monday, July 14, Clarke fired Greene from the Department. The Bureau of Excise Taxes, of which Greene had been chief, was combined with the Bureau of Sales Taxes. The Bureau of Administrative Services was combined with the Bureau of Planning and Research, and the former Chief of the Bureau of Administration, Henry Dardeno, succeeded Aufiero as Chief of the Bureau of District Offices. There were no other removals or reassignments of bureau chiefs, and no other demotions except for Pasquale Pignato, who had a provisional appointment as Assistant Bureau Chief under Mr. Dardeno. Pignato was transferred along with Dardeno to the Bureau of District Offices as his assistant, but because there was no position of Assistant Bureau Chief in that Bureau he was reduced in grade to his permanent level of supervisor. Pignato is an active Republican.

Pignato testified in substance that at the time of his demotion he asked Clarke if it was because he was a Republican. Clarke said, "It might be." Pignato said, "Who else?" Clarke said, "Greene and Aufiero."

Clarke denies that this conversation occurred. He says that he transferred Pignato because he did not want to waste Pignato's expertise in processing income taxes, which was needed in the Bureau of District Offices.

I think it more likely than not that Pignato was transferred to the Bureau of District Offices because his former position was eliminated once the Bureau of Administrative Services was merged with the Bureau of Planning and Research. A witness named White testified that Clarke and Pignato did not like one another, and this may have been a factor in the demotion. I am not persuaded that Pignato's Republicanism accounted for his transfer.

Four other Bureau Chiefs appointed during the Sargent administration, with the help of Harold Greene, remained in their post after Clarke became Commissioner, and except for one retirement in the ordinary course remain there today.

B. *The Reason for the Discharge*

1. *The plaintiff's prima facie case*

The plaintiff has established a prima facie case that his discharge was because of his political *activity*. He has not established a prima facie case that his discharge was because of his party *affiliation*. He introduced evidence that he was doing a satisfactory job. The critical evidence is that he was demoted at the same time as Greene was fired. There is no evidence in the case concerning Greene's performance. The plaintiff's evidence warrants the inference that the two of them were demoted and discharged because of their control of patronage in the prior administration. Greene, however, was not a Republican. Other bureau chiefs appointed by the Sargent administration were not dislodged. What distinguishes Greene and Aufiero from them is their prior participation in patronage appointments, and I find that Aufiero has established a prima facie case that this participation was the reason for his demotion.

## 2. The defendants' evidence of justification

Once the plaintiff presented a prima facie case, the burden shifts to the defendant to show a non-political justification for the discharge by a preponderance of the evidence. See Rulings of Law, infra. The defendants introduced evidence that both Commissioner Metaxas and the defendants were displeased with Aufiero's performance because of his failure to go out to the district offices and his propensity to "hang around the State House" during business hours. Metaxas testified that he kept Aufiero on the job only because of his gubernatorial sponsorship. Metaxas held over for six months after Sargent left office, but did not discharge Aufiero during this period. The defendant Clarke does not appear to have required any change in the administration of the Bureau of District Offices when Dardeno was appointed, and so far as appears from the evidence, Dardeno is doing just about what Aufiero did. Pignato in fact testified that he really had nothing to do as Dardeno's assistant.

■ Accordingly, I am not satisfied that the defendant has satisfied the burden of proving by a preponderance of evidence that the plaintiff would have been fired regardless of his patronage activities; or as conversely stated, the defendant has not overcome the inference from the plaintiff's evidence that "but for" the patronage activity, the plaintiff would not have been fired.

## 3. Nature of the position

Under Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the prohibition against political discharge was limited to non-policymaking positions. That would have been a close question in this case, raising among other things, the issue of whether it is the potential of the position or the actual activities of the discharged employee that governs. The issue has been foreclosed by the Supreme Court's decision in Branti v. Finkel, —— U.S. ——, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), decided after the trial in this case and while this opinion was being drafted. The critical issue now is whether political affiliation has any relevance to the performance of the particular job. In this case, at least, it is clear that political affiliation has absolutely no relevance to the performance of the duties of Bureau Chief, Bureau of District Offices.

## RULINGS OF LAW

■ A public employee, even one not classified under civil service, may not be discharged because of his affiliation with a political party, nor may his continued employment be conditioned on his joining the political party then in power. Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Branti v. Finkel, —— U.S. ——, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The only exception to the rule occurs when the political affiliation is relevant to the effective discharge of the office. The constitutional values which justify the intervention of the federal judiciary in the traditional processes of the federal and state executive branch are said to be the freedoms of association and belief. Branti, supra, —— U.S. at ——, 100 S.Ct. at 1293.

■ If the plaintiff presents a prima facie case of discharge because of constitutionally protected activity, the burden shifts to the defendant to prove by a preponderance of the evidence that the plaintiff would have been discharged for other reasons in any case. Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Givhan v. Western Line Consol. School Dist., 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

The determinative question in this case, in view of my findings of fact, is whether the activity for which the plaintiff was demoted was constitutionally protected.

The plaintiff was not fired because of his beliefs or association but because of his position in the prior administration. That position was related to his political association, i. e., patronage appointments, and might well be deemed protected if it did not involve the very conduct that was itself condemned in Elrod v. Burns and Branti v. Finkel. It is doubtful if even under those

cases the same conduct can be both constitutionally condemned and constitutionally protected.

 A distinction might be made between the hiring done by the plaintiff here, and the firing done by the defendants in *Elrod* and *Branti*. But these are obviously two sides of the patronage coin. Clearly, the inducement to suppress one's political philosophy and choice of party affiliation operates equally forcefully on the person who seeks a job or promotion as it does on one who desires to retain one. *Branti,* —— U.S. at ——, 100 S.Ct. at 1297, n.2 (Powell, J., dissenting).

I conclude that the activity for which the plaintiff was discharged was not constitutionally protected.

## ORDER FOR JUDGMENT

Accordingly, I find and rule that the plaintiff is not entitled to equitable relief or damages against the defendant Clarke, and I order that judgment be entered for both defendants.