**Myron J. AUFIERO, Plaintiff-Appellant,**

v.

**Owen L. CLARKE et al.,
Defendants-Appellees.**

**No. 80–1315.**

United States Court of Appeals,
First Circuit.

Argued Oct. 7, 1980.

Decided Jan. 22, 1981.

Regina L. Quinlan, Boston, Mass., with whom John A. Aufiero, Boston, Mass., was on brief, for plaintiff-appellant.

Paul W. Johnson, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for defendants-appellees.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This appeal presents the question whether a Chief of Bureau in a state's department of taxation may be demoted in 1975 for his earlier service as a source of information and recommendations relating to patronage hirings and promotion.

Plaintiff brought suit under 42 U.S.C. § 1983 against defendant Clarke, the Commissioner of Corporations and Taxation, and the Governor of Massachusetts, charging that his removal as Chief of Bureau for the Bureau of District Offices was solely because of his membership in the Republican Party, and asking that such action be declared a violation of his constitutional rights, that he be reinstated, and that he be awarded $60,000 damages.

The following relevant facts were revealed in a non-jury trial. Plaintiff was first employed by the state in 1966 as a provisional sales tax examiner. In 1970 he joined the Republican Party. While working in the gubernatorial campaign of Governor Sargent, he became friendly with one Harold Greene, later the Governor's patronage secretary, and, indeed, served as Greene's advisor on appointments within the Department of Corporations and Taxation. Plaintiff, promoted in 1970 to Supervisor in the Sales Tax Bureau, and in 1972 to Chief of Bureau, Bureau of District Offices, would keep Greene informed of vacancies in his Department and would recommend for or against specific employees receiving appointments or promotions. In all, between 50 and 100 positions were filled in this manner during plaintiff's tenure. Governor Dukakis defeated Governor Sargent in 1974, and in 1975, appointed defendant Clarke the new Commissioner of Corporations and Taxation, giving him a mandate to abolish patronage and to put the department on a merit hiring basis. Clarke then fired Greene and demoted plaintiff to the position of supervisory tax examiner.

The district court, 489 F.Supp. 650, held that plaintiff had established a prima facie case that his discharge was because of his participation (i. e., his sharing of control with Greene) in patronage appointments. It also held that defendants had not proven that plaintiff would have been removed from his job for unsatisfactory performance of his duties. The court, applying *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), as modified by *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), determined that political affiliation was not relevant to plaintiff's old job of Bureau Chief, but that plaintiff was not demoted because of his political beliefs, association, or party affiliation, but only because of his patronage activity—the very conduct condemned in *Elrod* and *Branti*—and therefore not constitutionally protected. It accordingly rendered judgment for defendants.

We see difficulty in the district court's analysis. Under *Elrod* and *Branti* it is clear that one cannot be discharged from a position "solely for the reason that [he is] not affiliated with or sponsored by" a political party. *Branti, supra,* 445 U.S. at 517, 100 S.Ct. at 1294, *quoting Elrod, supra,* 427 U.S. at 350, 96 S.Ct. at 2678. It is also clear that patronage activities by government employees are not protected. That partisan political activities can be regulated has long been acknowledged. *United Public Workers of America v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). Had plaintiff been removed from his position because he was currently engaged in patronage activism, contrary to state statute or even contrary to administration policy, there could be no doubt that he was beyond the pale of protection.

The fact is, however, that plaintiff was removed from his higher level position because of something he had done in the past and which, because of the change in administration, he could not do in the present. If plaintiff, notwithstanding *Elrod* and *Branti,* can be so sanctioned, we see no reason why an administrator could not discharge employees who had played important patronage roles years, or even decades ago, or employees who had received and continued to enjoy the benefits conferred by the patronage activists. Such actions would equally well subserve the justification articulated by the state, i. e., that plaintiff's demotion "vindicates" the merit system, eliminates the appearance of political bias, and removes partisans from the work force. But we would have grave doubts of the legitimacy of such sweeping actions. They would trench upon firing for mere affiliation.

Having such questions, we prefer to decide this case on what appears to us as the clearer ground of the non-retroactivity of *Elrod.*[1] The first criterion identified in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) as mandating non-retroactivity is that the decision to be applied "must establish a new principle of law, either by overruling clear past precedent ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed". *Id.* at 106, 92 S.Ct. at 355. Whether or not cases in factually different non-partisan contexts such as *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) may in retrospect be seen in harmony with the underlying rationale of *Elrod,* we may certainly say that banning patronage dismissals of all but policy-making or confidential government employees was not "clearly foreshadowed". *Cf. Loughney v. Hickey,* 635 F.2d 1063, 1065 (3d Cir. 1980) (Aldisert, J., concurring) (a much stronger statement).

As for *Chevron's* second criterion, a determination "whether retrospective operation will further or retard [the] operation" of the rule, *Chevron, supra,* 404 U.S. at 106–07, 92 S.Ct. at 355, this appears to us as a neutral or unhelpful inquiry in this case. We cannot say, in any event, that retroactivity is essential to *Elrod's* prospective vitality. The final factor, however, "the inequity imposed by retroactive application", *id.* at 107, 92 S.Ct. at 355, appears to weigh clearly on the scale of non-retroactivity. To the extent that causes of action have survived relevant limitations periods, a retroactive application of *Elrod* and *Branti* could propel former government employees, who generally had no expectation of tenure, into litigation which, if successful, would necessitate the eviction of their blameless successors or an awkward and redundant holding of dual offices. The liability of local governmental bodies that had acted in reliance on the nearly unanimous rejection of the *Elrod* rationale in the prior case law could be enormous. *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (municipality may not assert the good faith of its officers as a defense to § 1983 liability).

---

1. We are aware of at least two prior occasions when we have applied *Elrod* to pre-*Elrod* events, *Alfaro de Quevedo v. De Jesus Shuck,* 556 F.2d 591 (1st Cir. 1977) and *Rivera Morales v. Benitez de Rexach,* 541 F.2d 882 (1st Cir. 1976). In neither case, unfortunately, does it appear that the retroactivity issue was raised or considered.

We therefore hold that events occurring prior to the *Elrod* decision date, June 28, 1976, shall not be subject to the holding of that case. We find ourselves in agreement with the Fourth Circuit in *Ramey v. Harber*, 589 F.2d 753 (1978), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979), as well as the majority of district courts which have considered the issue.[2] Plaintiff argues that notwithstanding *Elrod* his discharge was constitutionally offensive under pre-*Elrod* decisions such as *Perry v. Sinderman* and *Keyishian v. Board of Regents, supra*. Our conclusion that these cases did not clearly foreshadow *Elrod* necessarily means that we do not consider them to compel *Elrod's* result, nor would we, unaided by the Supreme Court's later teaching, reach that result ourselves as a matter of first impression. In this regard, we note that plaintiff's case below was based entirely on *Elrod*, despite the early assertion of a nonretroactivity defense. Accordingly, since we are of the view that plaintiff had no legal protection against removal in the absence of *Elrod*, we must *affirm* the judgment of the district court.

---

**2.** *Raggio v. Matunis*, 489 F.Supp. 16 (E.D.Pa. 1979); *Marino v. Bowers*, 483 F.Supp. 765 (E.D.Pa.1980); *Litwhiler v. Hildlay*, 429 F.Supp. 984 (M.D.Pa.1977); *contra, Retail Clerks International Ass'n v. Leonard*, 450 F.Supp. 663 (E.D.Pa.1978).