**AFSCME**

v.

**MORSE, et al.**

**No. C–93–13–L.**

United States District Court,
D. New Hampshire.

Jan. 22, 1993.

---

David A. Horan, Hillsborough County Attorney's Office, Manchester, NH, for defendant.

Maureen E. Dunnigan, Craig & Wenners, PA, Manchester, NH, for plaintiff American Federation of State County & Mun. Employees.

## ORDER ON MOTION FOR TEMPORARY INJUNCTION

LOUGHLIN, Senior District Judge.

Plaintiffs in this action prior to January 6, 1993 were employed as Deputy Sheriffs in the Hillsborough County Sheriff's Department.

The incumbent Sheriff prior to the September, 1992 primary elections was Louis Durette. From the day after the primary election he was in a lame duck status. He was defeated by the present incumbent, Walter Morse in the Republican primary election. There had been a bitter somewhat internecine struggle within the sheriff's department prior to the primary election. Some of Durette's personnel who had been hired by him covertly and sometimes overtly campaigned for Morse. Durette's superintendent, Anderson was eventually fired by Durette because of his activities on August 14, 1992.

The general overall contention of the plaintiffs was that they were fired on January 6, 1993 because they did not support the candidacy of Morse.

Arthur Durette, who incidentally is the son of the former sheriff, Louis Durette, and James Hardy testified at the day long trial on January 19, 1993. The other plaintiffs did not testify as their testimony would have been cumulative as represented by their counsel.

The defendant brought two motions to dismiss the case. In the first motion the defendant cites N.H.Rev.Stat.Ann. § 104:3 paraphrasing. "A sheriff may appoint so many deputies as he thinks proper ... and no deputy shall act as such until the record is made". Defendant goes on to state that because the six former deputy sheriffs for whom the union is now seeking relief were all not reappointed by Sheriff Morse they cannot today legally act as Hillsborough County deputy sheriffs. This allegedly was the custom and practice. This is a simplistic viewpoint which begs the question and ignores federal law as enunciated in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). This motion is denied.

In defendants' second motion to dismiss the defendant alleges that the plaintiffs orally informed the defendants' employer Anderson, through William Barry that arbitration would ensue through a collective bargaining agreement. It was later ascer-

tained at the hearing that the plaintiffs had made this statement through an abundance of circumspection as the ten day period to submit to arbitration was about to expire. Further investigation had disclosed that the collective bargaining agreement does not apply to deputy sheriffs, see clause 16.1, Defendant's exhibit D. N.H.Rev.Stat. Ann. § 104:27 would be apposite to all certified deputy or special deputy sheriffs. This motion is also denied.

Walter Morse officially took office as Sheriff of Hillsborough County on January 6, 1993. He has an excellent background in law enforcement. He spent thirty years as a New Hampshire state policeman; when he retired he had attained the rank of Captain. During his campaign he had promised to end nepotism and overspending and balance the budget. Balancing the budget in the sheriff's department was one of the paramount issues in the race for sheriff.

By letter dated December 30, 1992, written on his campaign letterhead, Morse wrote a form letter to the six plaintiffs in this action and at least two others that they had been terminated and thus would not be reappointed. Morse testified that he listened to the general public and to old friends. Morse did admit that he never reviewed the plaintiffs' personnel files when he made his termination to discharge the plaintiffs. It is evident that because of bitterness between Durette and Morse there was not a transition period. This is a two-edged sword as caution would dictate that he reviewed plaintiffs' files before summarily discharging them without any semblance of a hearing. One excuse is that Morse understandably was budget conscious after problems the former sheriff had with his budget and his ongoing strife with the county delegation. Twenty-four deputy sheriff positions have been filled with at least four vacancies so Morse is presently within his budget.

It was brought out on examination of Morse that Frank Jones, who also testified, was under investigation for alleged misdeeds, but Morse retained him with knowledge of the investigation. In fact Morse has instituted another or further investigation into the Jones matter.

Morse also stated that if needed the plaintiffs would be considered for positions with his department. Frank, an active Democrat who had unsuccessfully challenged former Sheriff Durette in the past, was retained by Morse. Cunningham, another Democrat, was initially given his walking papers, but later rehired after retaining Attorney Paul Gagnon who conferred with Morse.

Sheriff Morse went on to say that none of the plaintiffs were needed at this time. After plaintiffs were discharged they were given an opportunity to re-interview which they took advantage of without any of them being re-hired except Cunningham.

Hiland "Andy" Anderson has had a lengthy background with the Hillsborough County Sheriffs' Department having been hired by Sheriff Larry Shea in 1976. When he was fired by Sheriff Durette on August 14, 1992 he was superintendent of operations; he did the budget estimating. The reason for his firing was because he actively supported Morse's primary candidacy while working for and after being hired and reappointed by Sheriff Durette every two years since he took office in 1984. The Court has little difficulty in finding on all of the evidence presented that Anderson told Morse who to retain and who to discharge based on political motivations. Anderson also made inquiries about who was campaigning for whom in both the primary and general elections. The Court finds that Anderson also stated when he had literature with regard to Sheriff Durette's budget that he made the statement "This is the ticket to reappointment."

Arthur Durette was appointed by his father as deputy sheriff on January 1, 1985. There was no evidence before the Court that either he or any other plaintiff for that matter was ever reprimanded or subjected to disciplinary action. In fact some had commendations in their files. He, like all others including Lloyd Doughty was called in on January 6, 1993 and given his letter of dismissal. All those dismissed were further humiliated as James Hardy so testi-

fied, by being escorted forthwith by deputy sheriffs to their respective homes and ordered to turn in Hillsborough County Sheriff equipment that they had pertaining to their employment.

James Hardy was hired by then Sheriff O'Flynn in 1981. When discharged on January 6, 1993 he had attained the rank of sergeant and his salary was in the $33,-000.00 range. He was informed that he was not part of the initial team by Deputy Broderick and was completely shocked when he was discharged as he thought that perhaps he might only be reassigned. He was the number two man in seniority, but Morse told him that he had to depend upon people that he knew. The following day after his discharge he went back to see if he could be rehired; his efforts proved nugatory. The general election was not on party lines or loyalty as Durette, a Republican, backed the Democratic candidate Welch who lost in the general election.

The quietus as far as Hardy is concerned is the fact that while still employed by a lame duck sheriff he was requested by Durette to go to Pelham, New Hampshire to campaign for Welch. Morse was aware of this. Hardy was between the proverbial rock and a hard place.

Lloyd Doughty was also terminated; because he was a member of management he could not belong to the union and was unable to be joined in this suit. Lieutenant Gouptil, Sheriff Durette's cousin, was also discharged and he has no direct interest in this litigation.

■ If the plaintiff presents a prima facie case of discharge because of constitutionally protected activity, the burden shifts to the defendant to prove by a preponderance of the evidence that the plaintiff would have been discharged for other reasons in any case. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Givhan v. Western Line Consol. School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). *Aufiero v. Clarke,* 489 F.Supp. 650 (D.Mass.1980).

■ The plaintiffs have presented a prima facie case of discharge for constitutionally protected activities. There is evidence before the Court, some of it is circumstantial in nature and some direct evidence that they were discharged because of political reasons. While it is true that there was no blanket discharge of all Democrats this was not a Republican/Democratic bloodbath. It evolved from an internal strife at the Republican primary level. The Court finds that a disgruntled Anderson in all probability, to use the vernacular was the hatchet man and gave his informed opinion to Morse as to who should stay or be dismissed because of the plaintiffs' alleged voting or campaigning proclivities. This is further evidenced by the arbitrary way Morse fired the plaintiffs. Some of them he did not recognize personally; he never even perused their personnel files; he retained an individual who was and still is under investigation whereas all plaintiffs had good work records. In the matter of Hardy, the Court finds in all probability he was discharged because of the Pelham incident, in spite of his impeccable record and letters of commendation from two able judges, who unlike Morse, were conversant with his work habits.

Morse apparently was making an arbitrary partial clean sweep in his first day in office. If he was being purely objective and non-political he could have waited a few weeks and in fairness perused the plaintiffs' personnel files along with the personnel files of those he retained.

■ Defendants' contention that N.H.Rev.Stat.Ann. § 104:3 is controlling does not have any merit according to the circumstances and facts of this case. In defendants' answer it is claimed that no one was terminated as the terms of all deputy sheriffs appointed by former Sheriff Louis Durette during his 1991–92 term of office expired on January 5, 1993.

The First Circuit addressed this issue in *Pacheco v. Gonzalez,* 809 F.2d 125 (1st Cir.1987). Reference in that case was made to *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) and *Elrod,* 427 U.S. at 363, 96 S.Ct. at 2685.

"[I]t is clear that the lack of a reasonable expectation of continued employment is not sufficient to justify a dismissal based solely on an employee's private political beliefs." 445 U.S. at 512 n. 6, 100 S.Ct. at 1291 n. 6.

The First Circuit has also stated its belief that,

> these cases make it clear that *Elrod* and *Branti* apply generally to an employee's right to retain his public employment, and they do not distinguish between employees discharged from a permanent position and those who fail to receive a new appointment. *Accord McBee v. Jim Hogg County, Tex.*, 730 F.2d 1009, 1015 (5th Cir.1984) (en banc).... Any other result would seriously undermine *Elrod* and *Branti* because local governments could pass laws providing that the jobs of nonpolicymaking employees extend only from election to election, and that the new officeholder is entitled to make all appointments.

*Pacheco*, 809 F.2d at 128.

A preliminary injunction is issued, restraining the defendant from discharging the plaintiffs and they are ordered reinstated immediately. It is also the order of this Court that they be paid back pay to the date of their unlawful discharge, less any earnings they may have received during this period which do not exceed or equal their salaries as deputy sheriffs for this interim.

The plaintiffs have presented a prima facie case of discharge because of constitutionally protected activity and in the preliminary injunction the defendant has not proved by a preponderance of the evidence that the plaintiffs would have been discharged for other reasons in any case. *Mt. Healthy City Board of Education*, 429 U.S. at 287, 97 S.Ct. at 576.

The Court is cognizant of the fact that defendants' counsel due to the expedited nature of this hearing may not have had sufficient time to procure more evidence to refute plaintiffs' contentions and does not want to appear as a rhadamanthus. If defendant desires an expedited hearing to present more evidence the Court will hear the case on its full merits at 9:00 a.m. March 29, 1993.[1]

---

1. The Court was not aware of the following until the evidence in the case was closed. Sometime in December, 1992 I was introduced to one of the plaintiffs, Richard Dubois at a boxing match in Manchester, New Hampshire. I sent him material relevant to a law department agency. Mr. Dubois did not testify at the trial and I did not recognize him if he was there. I have had no contact with Mr. Dubois since that one occasion.