**Edward DOYLE, Plaintiff,**

v.

**Michael S. DUKAKIS, Amy Anthony, Marvin Siflinger, Bernard Singer and the Massachusetts Housing Finance Agency, Defendants.**

**Civ. A. No. 85–0100–Y.**

United States District Court,
D. Massachusetts.

May 16, 1986.

William J. Doyle, Doyle & Doyle, Boston, Mass., for plaintiff.

Wade M. Welch, Boston, Mass., for defendants.

Alexander Gray, Jr., Asst. Atty. Gen., Boston, Mass., for Michael Dukakis.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an action for declaratory relief and damages against Michael S. Dukakis, Governor of the Commonwealth of Massachusetts ("the Governor"); the Massachusetts Housing Finance Agency (the "Agency"); Marvin Siflinger ("Siflinger"), Executive Director of the Agency; Bernard Singer ("Singer"), Chairman of the Board of Directors of the Agency; and Amy Anthony ("Anthony"), a member of the Agency Board and Secretary of the Executive Office of Communities and Development of the Commonwealth. The plaintiff, Edward Doyle ("Doyle") is a former employee of the Agency.

Doyle alleges that the defendants enumerated above have violated his civil rights by constructively discharging him in retaliation for his political support for and his personal association with former Governor Edward F. King. Specifically, Doyle asserts that his discharge violates both federal and state law which he sets forth as follows: 42 U.S.C. § 1983 (Count I),[1] 42

---

1. Defendants Dukakis, Siflinger, Singer and Anthony are sued individually and in their official capacities. Section 1983 requires "state action." As a matter of substantive constitutional law the state action requirement reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. *Lugar v. Edmundson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). There is an essential dichotomy between a deprivation by the state which is subject to scrutiny and private conduct as to which, however discriminatory or wrongful, the Fourteenth Amendment offers no shield. *Id.,* 457 U.S. at 936, 102 S.Ct. at 2753, citing *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974). The Supreme Court insists that the conduct complained of be "fairly attributable" to the state. *Id.* at 937, 102 S.Ct. at 2753. However, a private person who willingly participates in a joint activity with the state is acting under color of state law. *Lugar v. Edmundson Oil Co.,* 457 U.S. at 936–37, 102 S.Ct. at 2753. Accord-

U.S.C. § 1988 (Count II), Mass. Gen. Laws ch. 12, § 11H and 11I (Count III), and the common law of torts (the intentional infliction of emotional distress) (Count IV). For the reasons set forth below, the Court denies in part and allows in part the motions of the defendants for summary judgment.

## I. Background

The plaintiff Doyle was employed by the Agency from April, 1980 until his alleged discharge in 1984. Doyle worked as Special Assistant to the Executive Director and was "on loan" to the Financial Department. In April, 1984, Doyle was reassigned to a position as Community Services Advisor. Doyle alleges that this reassignment constitutes a constructive discharge.[2]

Doyle admits he was a political supporter and friend of former Governor Edward F. King. On June 3, 1983, the Governor and Anthony met with then Agency Executive Director John Blake. Although the Governor and Blake recall this discussion differently, both agree that the Governor raised the subject of Doyle's employment at the Agency. Subsequent to this meeting, Siflinger succeeded Blake as Executive Director. It was Siflinger who actually transferred Doyle to the position of Community Services Advisor.

The parties dispute the reasons for Doyle's transfer. Doyle contends that he was transferred to his new position in retaliation for his association with and support of former Governor King. As a group, the defendants deny that Doyle's political activity or personal associations contributed to the decision. Rather, they argue that legit-imate personnel concerns precipitated Doyle's transfer.

## II. Discussion

The parties place before the Court various motions for summary judgment. In support of their position, each relies on various affidavits, depositions, and answers to interrogatories. Rule 56, Fed.R.Civ.P., provides for summary judgment when the case at bar presents no genuine issue of material fact and the moving party is entitled to judgment as matter of law. The instant matter raises a federal question based on 42 U.S.C. § 1983 to which all subsequent allegations relate.[3] As a result, the Court first considers the motions for summary judgment on Count I.

> Section 1983 provides in relevant part: Every citizen who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proceeding for redress.

The defendant in a § 1983 action must be a "person," a term of legal art which includes municipalities and local governments which may be sued for monetary, declaratory or injunctive relief, but only if the allegedly unconstitutional action occurs "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Services*, 436 U.S. 658,

---

ingly, insofar as they survive herein, all claims will proceed against the defendants as both officials and private citizens, the Court reserving the final determination until it has a more complete record.

**2.** Doyle did not actually leave his employment with the Agency until September, 1984.

**3.** Count II, 42 U.S.C. § 1988, requires Doyle, as a threshold matter, to prevail on Count I before his request for attorney's fees may be considered. Counts III and IV are pendent: Count III alleges violations of Mass.Gen.Laws ch. 12, §§ 11H and 11I, and Count IV alleges the inten-tional infliction of emotional distress. If summary judgment erases the federal question before trial, the pendent claims likewise must be dismissed. *Bibbo v. Mulhern*, 621 F.Supp. 1018 (D.Mass.1985) ("It is settled law in this Circuit that in a non-diversity case where pendent state claims are joined with the federal cause of action, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed.'" *Id.* at 1031, citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Clark v. Taylor*, 710 F.2d 4, 12 (1st Cir.1983).

690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A municipality "cannot be held liable *solely* because it employs a tortfeasor—in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691, 98 S.Ct. at 2036.

■ A state is treated differently, however. Under *Monell,* its ancestors and its progeny, the Eleventh Amendment is a jurisdictional bar to suits against states in federal court. *Pennhurst State School v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984); *Quern v. Jordan,* 440 U.S. 332, 339–40, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662, *reh'g denied,* 416 U.S. 1006, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974); *Ford Motor Company v. Department of Treasury,* 323 U.S. 459, 466–67, 65 S.Ct. 347, 351–52, 89 L.Ed.2d 389 (1945). *But see Atascadero State Hospital v. Scanlon,* — U.S. —, —, 105 S.Ct. 3142, 3150, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting). Although four justices dissented, the Supreme Court recently restated this proposition: "Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour,* — U.S. —, —, 106 S.Ct. 423, 424, 88 L.Ed.2d 371 (1985), citing *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *see also Della Grotta v. State of Rhode Island,* 781 F.2d 343, 345 (1st Cir.1986). A state may waive its sovereign immunity to suit in its own courts, however, and may also waive its Eleventh Amendment immunity to suit in the federal courts. *Atascadero State Hospital v. Scanlon,* 105 S.Ct. at 3143; *Clark v. Barnard,* 108 U.S. 436, 437, 2 S.Ct. 878, 879, 27 L.Ed. 780 (1883). This is well-established despite the maxim that subject matter jurisdiction may not be conferred by consent. *See e.g., Mansfield, Coldwater & Lake Michigan Ry. v. Swan,* 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

■ A suit challenging the constitutionality of a state official's action, however, is an exception to the general proposition that states cannot be sued in federal courts without their consent or explicit waiver, as such an action is not considered an action against the state. *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). A legal fiction created by the Court in *Young,* this proposition regards the official's actions as state action for purposes of the Fourteenth Amendment but merely an individual wrong for purposes of the Eleventh Amendment. This fiction effectively brings federal scrutiny to bear on actions previously unreachable and encourages full compliance by the states with the Constitution.

Even so, this convenient anomaly affects the remedy available to a prevailing party. The Supreme Court held in *Young* that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. *Ex Parte Young,* 209 U.S. at 155–56, 159, 28 S.Ct. at 452, 453. The Court, however, has refused to permit claims for retrospective relief. *Green v. Mansour,* 106 S.Ct. at 426 ("Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex Parte Young* gives life to the Supremacy Clause.... But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Id.* at 426; *Pennhurst State School v. Halderman,* 465 U.S. at 102–03, 104 S.Ct. at 909; *Quern v. Jordan,* 440 U.S. at 337, 99 S.Ct. at 1143; *Edelman v. Jordan,* 415 U.S. at 668, 94 S.Ct. at 1358.

Thus, § 1983 will reach those acting "under color of" law, that is those "who carry a badge of authority of a state and represent it in some capacity whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961). This includes municipal corporations or state and local officials exercising the authority of the state, although private parties may also be sued.

Although a state officer can be enjoined under § 1983 from acting improperly, he or she cannot be required to make restitution for official conduct, however improper, because such an award would have to be paid from state coffers rather than from the individual's own pocket, and this would constitute an action for damages against the state—an action which the Eleventh Amendment bars. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Injunctive relief is available for a continuing violation because it vindicates the federal interest in assuring the supremacy of federal law. *Green v. Mansour,* 106 S.Ct. at 426. A federal district court may, in the alternative, issue a declaratory judgment that a particular practice violates constitutional law. 28 U.S.C. § 2201.

Ordinarily a declaratory judgment will be appropriate if the case-or-controversy requirements of Art. III are met. *Maryland Casualty Co. v. Pacific Coal & Oil,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") *Id.* at 273, 61 S.Ct. at 512. This strict standard requires the Court to reserve its decision on the appropriateness of a declaratory judgment until after it has fully heard the facts.

### Count I: 42 U.S.C. § 1983

#### (a) The Governor

The Governor of the Commonwealth may be sued as a state official pursuant to § 1983. Moreover, Doyle's allegations against the Governor are not amenable to summary judgment because the parties dispute what motivated Doyle's transfer. The Governor's assertions that he had no responsibility for such personnel decisions, including Doyle's transfer, is disputed by Doyle's detailed and specific averments as well as by several affidavits and depositions. The Court requires a more complete record of the June 3, 1983 discussion and other related conversations. As a result, the Governor prematurely relies on *Campana v. Eller,* No. 82–2392, slip op. at 11 (D.Mass. November 17, 1983), *aff'd,* 755 F.2d 212 (1st Cir.1985) (where Massachusetts' Governor King was dismissed because "Campana has failed to show sufficient material facts to raise a genuine issue for trial on whether King conspired to deprive Campana of his rights) and on *Aufiero v. Clarke,* 489 F.Supp. 650 (D.Mass. 1980) *aff'd* 639 F.2d 49, *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981) (where Aufiero alleged a deprivation of his constitutional rights by Clarke and the Governor because of his membership in the Republican party and the District Court dismissed the action as to the Governor at the close of the plaintiff's case because no evidence was presented to warrant a finding against him.)

Although Doyle may properly sue the Governor as a state official for declaratory judgment, he may not sue for damages where an award would have to be paid from state funds. Thus, compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment. *Green v. Mansour,* 106 S.Ct. at 426. Accordingly, the Court cannot hear Doyle's prayer for compensatory or punitive damages as against the Governor and, as a jurisdictional matter raised on its own motion, the Court strikes all such claims.

#### (b) The Massachusetts Housing Finance Agency

The Agency argues that it is not a public agency but rather a hybrid, quasi-public corporate entity with substantial private-sector functions, organized pursuant to Mass. Gen. Laws ch. 23A App. These functions allegedly include acting as a housing mortgagee, assisting private homeowners and developers in constructing low income housing. As such, the Agency asserts that it performs non-political tasks fundamentally similar to those of a bank. It raises revenue to finance its lending operations through the sale of tax exempt bonds and notes to the general public. The

Agency submits that these bonds and notes are not debts of the Commonwealth.

The Agency suggests that, by definition, it is not an "agency":

> [A]ny department, board, commission, division or authority of the state government or subdivision of any of the foregoing, or official of the state government, authorized by law to make regulations or conduct adjudicatory hearings. . . .

Mass.Gen.Laws ch. 30A § 1. The Agency further states: "Any law to the contrary notwithstanding, the MHFA [the Agency] shall not be subject to the provision of Chapter 30A of the General Laws." Amendment to Mass.Gen.Laws ch. 23A App., §§ 1–3, ¶ 1, inserted by Mass.St.1981 ch. 789, § 8.

On the other hand, Doyle argues that the Agency is a "state actor" for purposes of suit pursuant to 42 U.S.C. § 1983 because:

> There is hereby created and placed in the department of community affairs a body politic and corporate to be known as the Massachusetts Housing Finance Agency, which shall not be subject to the supervision or control of the department of community affairs or of any department commission, board, bureau or agency of this commonwealth except to the extent and in the manner provided in this act. The MHFA is hereby constituted a public instrumentality and the exercise by the MHFA of the powers conferred by this act shall be deemed and held to be the performance of an essential governmental function.

Mass.Gen.Laws ch. 23A, App. § 1–3. From the current record the Court cannot decide as matter of law whether the actions of the Agency are "fairly attributable" to the State. *Lugar v. Edmunson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). A nonwaivable jurisdictional issue, the Court reserves its deci-

sion on the propriety of suing the Agency in federal court until the development of a complete record.[4]

#### (b) Siflinger, Singer and Anthony

The defendants Siflinger, Singer, and Anthony are amenable to suit whatever the disposition of the Agency's status. If the Agency constitutes "the State," the defendants become state officials and Doyle articulates a cognizable claim against them for declaratory relief, the analysis paralleling that applied to the Governor. If the Agency is deemed a private individual, the defendants are likewise private individuals and amenable to suit under *Lugar. See* n. 1, 102 S.Ct. n. 1, *supra.* If the Agency is a municipal corporation, the defendants become municipal officers and amenable to suit under *Monell.*

In defense of their motions for summary judgment, the defendants Siflinger, Singer, and Anthony first argue that Doyle had no property right to his employment at the Agency, citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). While it is black-letter law that a showing of interference with a constitutionally-protected right by someone acting under the color of state law is a prerequisite to a § 1983 action, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Malachowski v. City of Keene,* 787 F.2d 704, 710 (1st Cir.1986), the Court is not convinced by defendants' argument. *See Campana v. Eller,* 755 F.2d 212 (1st Cir.1985). *Campana* involved a former employee of the Agency who sued a former Agency Executive Director as well as other Agency officials for terminating his employment at the Agency in violation

---

**4.** The arguments of the parties on this point are somewhat baffling. If, as Doyle contends, the Agency constitutes "the State," the Eleventh Amendment immunizes it from suit as a jurisdictional matter, and, as explained above, the Court must allow its motions for summary judgment. If on the other hand, as the Agency

asserts, it is a "hybrid," a private corporation, or a municipal entity, it is amenable by any of these designations to suit under *Monell.* Although not given to gratuitous comment, the Court observes that the parties appear to argue propositions logically opposite to their interests.

of his rights of free speech. Campana's suit relied upon 42 U.S.C. §§ 1983 and 1985. Although Campana lost on the merits, his case went to trial.

Second, the defendants Sifinger, Singer, and Anthony urge the defense of qualified immunity. That defense cannot prevail on this record. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court defines the limits of qualified immunity essentially in objective terms that provide no license to lawless conduct:

> The public interest in deterrence of unlawful conduct and in the compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights he should be made to hesitate and a person who suffers injury caused by such action may have a cause of action.

*Id.* at 819, 102 S.Ct. at 2738. [Emphasis added.] *See Fernandez v. Leonard,* 784 F.2d 1209, 1214, 1216 (1st Cir.1986). In *Campana v. Eller,* this Court discussed *Harlow* and rejected the qualified immunity defense raised by the defendants Eller and MacLeod on their motions for summary judgment—Eller was then Executive Director of the Agency and MacLeod was his Special Assistant. The Court reasoned that the right not to be dismissed from employment at the agency solely for exercising one's free speech rights was clearly established at the time of Campana's dismissal. Accordingly, Eller and MacLeod could not be deemed to have immunity under the circumstances.

■ The same analysis applies here. The Supreme Court confirms that on summary judgment the judge appropriately may determine not only the currently applicable law, but whether that law as clearly established at the time an action occurred. *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738. Accordingly, this Court rules that the right not to be dismissed from employment at the Agency solely because of lawful political support for and friendship with former Governor King was clearly established at the time of Doyle's

alleged constructive discharge. The defendants Siflinger, Singer, and Anthony should reasonably have known of such rights and cannot rely on their immunity.

■ Third, the defendants urge that their motions for summary judgment be allowed because Doyle has failed to sustain his threshold burden that political animus provoked his transfer and constructive discharge, if discharge it was. The central issue in this matter, the motivation for Doyle's reassignment, cannot be decided on the present record. Genuine issues of material fact remain and require resolution by trial.

Accordingly and because disputed facts surround their participation in Doyle's discharge, the Court denies the motions of Siflinger, Singer, and Anthony for summary judgment on Doyle's allegations of a violation of 42 U.S.C. § 1983.

### Count II: 42 U.S.C. § 1988

In the Court's discretion, this statute provides for the recovery of attorney's fees if Doyle prevails on a significant issue advanced by his litigation, even as against the state. *Nadeau v. Helgemoe,* 581 F.2d 275, 278 (1st Cir.1978). The Supreme Court has expressly held that, in enacting 42 U.S.C. § 1988, Congress intended to override the Eleventh Amendment immunity of the states and authorize fee awards payable by the states when their officials are sued in their official capacities. *Quern v. Jordan,* 440 U.S. 332, 344, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979); *Hutto v. Finney,* 437 U.S. 678, 693–94, 98 S.Ct. 2565, 2574–75, 57 L.Ed.2d 522 (1978) *reh'g denied,* 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed.2d 83 (1979). *See Exeter-West Greenwich Regional School Dist. v. Commissioners of Education,* 788 F.2d 47, 51–52, 53 (1st Cir. 1986). Given the Court's ruling that Doyle is entitled to trial on his claims under 42 U.S.C. § 1983, it would be premature to grant summary judgment here.

### Count III: Mass.Gen.Laws ch. 12, §§ 11H and 11I

■ The Court entertains Count III as a matter of pendent jurisdiction. All de-

fendants have moved for summary judgment on Count III which alleges a violation of Mass.Gen.Laws ch. 12, §§ 11H and 11I. As a threshold matter, the Court allows all motions for summary judgment as to § 11H because only the attorney general may invoke it.[5] Section 11I is a different matter, for it provides Doyle with a private right of action.

### (a) The Governor

*Pennhurst* bars this pendent state claim against the Governor. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (" 'The Eleventh Amendment is an explicit limitation of the judicial power of the United states.' *Missouri v. Fiske*, 290 U.S. 18, 25, 54 S.Ct. 18, 20, 74 L.Ed. 145 (1933). It deprives a federal court of power to decide certain claims against the States that otherwise would be within the scope of Art. III's grant of jurisdiction.... This constitutional bar applies to pendent claims as well.") *Id.* at 119–20, 104 S.Ct. at 917–18. Accordingly, the Court dismisses Count III against the Governor for lack of subject matter jurisdiction.

### (b) The Agency and Defendants Siflinger, Singer and Anthony

Applying its reasoning above, the Court determines that the doctrine in *Pennhurst* requires it to reserve ruling on the pendent state claims against all the above named defendants until such time that their status may be clarified, except insofar as it has previously dismissed Doyle's claims under Mass.Gen.Laws ch. 12, § 11H for failure to state a claim.

### Count IV: Intentional Infliction of Emotional Distress

The Court's analysis here initially repeats its analysis above. *Pennhurst* dictates that the Court lacks subject matter jurisdiction over the pendent state claim against the Governor. The Court's ruling as to subject matter jurisdiction over all other defendants would await further development of the record were it not for the fact that, on undisputed facts presented here—even resolving all disputed factual issues and drawing all reasonable inferences in favor of Doyle—as matter of law, no reasonable fact finder could find that the conduct complained of was so extreme and outrageous as to shock the conscience of the community. *Agis v. Howard Johnson, Inc.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976).[6] Accordingly, judgment must enter for all defendants on this Count.

### III. Conclusion

*Pennhurst* produces some convoluted results as the instant matter amply demonstrates. Accordingly and for the reasons set forth above, the Court must rule as follows: all motions by the Agency are reserved except that partial summary judgment is ALLOWED in its favor as to the claims under Mass.Gen.Laws ch. 12, § 11H upon the ground that it fails to state a claim upon which relief may be granted. On Count I, which alleges a violation of 42 U.S.C. § 1983, the Governor's motion for summary judgment is DENIED and the like motions of the defendants Siflinger, Singer, and Anthony are DENIED. On Count II, attorney's fees under 42 U.S.C. § 1988, the Governor's motion for summary judgment is DENIED and the

---

**5.** Mass.Gen.Laws ch. 12, § 11H provides in relevant part:

> Whenever any person or persons, whether by threats, intimidation or coercion, or attempt to interfere with by threats, intimidation or coercion with the exercise or enjoyment by any other person or persons of right secured by the constitution of the laws of the commonwealth, *the attorney general may bring a civil action* for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured.

[Emphasis added.]

Section 11I provides a private right of action.

**6.** Doyle's complaint alleges that his reassignment to the job of Community Services Advisor resulted in "a multitude of meaningless tasks such as delivering eye glasses to a welfare recipient, being forced to attend and reside in a detoxication [sic] center..., and being ordered to attend and assist at lectures on alcoholic abuse."

like motions of defendants Siflinger, Singer, and Anthony are DENIED. Insofar as Count III is based on Mass.Gen.Laws ch. 12, § 11I, the Governor's motion for summary judgment is ALLOWED, all other motions are reserved pending the development of a more complete record. On Count IV, the intentional infliction of emotional distress, the motions of all defendants are ALLOWED. All other motions, depending as they do on the status of the Agency, are reserved until the outset of the trial at which time an evidentiary hearing will be held before the Court to resolve this issue.

SO ORDERED.