Edward DOYLE, Plaintiff,

v.

Michael S. DUKAKIS, Amy Anthony, Marvin Siflinger, Bernard Singer and the Massachusetts Housing Finance Agency, Defendants.

Civ. A. No. 85–100–Y.

United States District Court,
D. Massachusetts.

Nov. 4, 1988.

William J. Doyle, Doyle & Doyle, Boston, Mass., for plaintiff.

Wade M. Welch, Boston, Mass., for defendants.

Alexander Gray, Boston, Mass., for Michael Dukakis.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

This matter comes before the Court upon the renewed motion of The Massachusetts Housing Finance Agency ("the Agency"), Marvin Siflinger ("Siflinger"), Bernard Singer ("Singer"), and Amy Anthony ("Anthony") for summary judgment.[1] These defendants had already raised the defense of qualified immunity in a prior motion for summary judgment. The Court denied that motion on the record as it then existed. *See Doyle v. Dukakis,* 634 F.Supp. 1441, 1447 (D.Mass.1986).[2] While the factual record has not changed since the earlier denial, these defendants have moved to renew their motion in light of the virtual explosion of political discharge case law emanating from the First Circuit in the wake of the 1984 Puerto Rican gubernatorial election. The more complete explication of the law in this area by the recent First Circuit decisions makes clear, the defendants argue, that they are immune from liability in the present case. After careful reflection, this Court agrees.

1. While the defendant Michael S. Dukakis ("Dukakis") does not himself renew his original motion for summary judgment, he argues these same points in his trial brief and, for purposes of this opinion, is treated as joining in all aspects of this motion.

2. The Agency then sought summary judgment on the ground that it was an arm of the Commonwealth of Massachusetts. This motion was likewise denied. *Doyle v. Dukakis,* 687 F.Supp. 18 (D.Mass.1988). The present motion is thus the Agency's third attempt to obtain judgment short of trial.

### A. First Amendment Protection.

█ It is now relatively clear in this Circuit that when one claims the protection of the First Amendment right of free association against a politically-motivated discharge, a court must engage in a two-step analysis. The first step is:

A threshold inquiry, which derives from *Branti* [*v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) ], [and] involves examining whether the position at issue, ... relates to "partisan political interests ... [or] concerns." 445 U.S. at 519; 100 S.Ct. at 1295. That is, does the position involve government decisionmaking on issues where there is room for political disagreement on goals or implementation?

*Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986) *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). If the position itself appears to fall within the scope of the First Amendment's protection,

the next step is to examine the particular responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement.

. . . . .

'Among the indicia that locate a job along the spectrum between policymaker and clerk are: relative pay, technical competence, power to control others, authority to speak in the name of policymakers, public perception, influence on programs, contact with elected officials and responsiveness to partisan policies and political leaders.'

*Id.* at 242 (quoting in part from *Ecker v. Cohalan,* 542 F.Supp. 896, 901 [E.D.N.Y. 1982] [Weinstein, C.J.] ). Implementing this analysis, the First Circuit has acknowledged that the following positions are constitutionally protected: city court bailiff, road grader, bookkeeper, deputy court clerk, deputy sheriff, supervisor of a branch of an auditor's office, waiters, cleaning people, and a director of domestic services. Further, it has recognized that the following positions are beyond the scope of the First Amendment's constitutional protections as of 1985: a county's assistant director of public information, the first deputy commissioner of the department of water, superintendent of employment for the Chicago Park District, an assistant state's attorney, and assistant district attorney, fee agents, the city solicitor and assistant solicitor, and the deputy park commissioner. See *Juarbe–Angueira v. Arias,* 831 F.2d 11, 16 (1st Cir.1987) cert. denied, —— U.S. ——, 108 S.Ct. 1222, 99 L.Ed.2d 423 (1988) and cases cited therein.[3]

In the present case, the plaintiff Doyle, as the Special Assistant to the Executive Director on Loan to the Financial Department, had the following responsibilities:

1) to serve as liaison with other governmental agencies in both the federal and state governments;

2) to participate in negotiations with investment bankers for debt issues of the Agency;

3) to coordinate the Agency's investor relations program;

4) to serve as the Executive Director's liaison with the Commonwealth's Congressional delegation; and,

5) to perform special assignments as directed by the Executive Director.

*See* Affidavit of Wade M. Welch, Exhibit 2. Edward Hanley, Secretary of Administration and Finance during the administration of Governor Edward King, hired the plaintiff Doyle for the purpose of improving the

---

**3.** Doyle suggests that such general cataloging is inapposite in view of the implicit determination by another judge of this Court that the position of Office Manager within this very Agency enjoyed First Amendment protection against politically motivated job actions. *See Campana v. Eller,* No. 82–2392–MA, slip op. (D.Mass. Nov. 17, 1983), *aff'd on other grounds, Campana v.* *Eller,* 755 F.2d 212 (1st Cir.1985). This Court, however, has no basis in this record for comparing the duties of the Agency's Office Manager and its Special Assistant to the Executive Director. Moreover, like *this Court's* initial opinion herein, the decision of the District Court in *Campana* preceded the recent First Circuit decisions in this area.

image of the Agency's bonds in the various financial markets in which they were traded. In accomplishing this goal, Doyle spoke with Hanley approximately once every two to three weeks while working at the Agency. Further, on occasion he arranged breakfast meetings with the Commonwealth's Congressional delegation and sought to discharge that liaison function. Therefore, on the basis of these undisputed facts,[4] even if the position itself is within the scope of the First Amendment protection—i.e., political affiliation and loyalty is not a proper aspect of Doyle's job qualifications,—the particular fulfillment of the position's rather amorphous duties by the plaintiff Doyle would seem necessarily to partake of a political dimension.

### B. Qualified Immunity.

■ The Court need not rest its decision on such a broad determination, however, in light of the qualified immunity from suit available to these defendants. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court defined the scope of immunity available to government officials performing discretionary functions and adopted an objective standard that the Supreme Court hoped could permit the resolution of many claims through summary judgment. The Supreme Court held that such officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. The Supreme Court wrote that if a judge, on summary judgment, determines that "the law was clearly established at the time an action occurred, the immunity defense ordinarily should fail since a reasonably competent public official should know the law governing his conduct." *Id.* at 818–19, 102 S.Ct. at 2738. In *Doyle v. Dukakis,* 634 F.Supp. 1441, 1447 (D.Mass.1986), this Court reasoned "that the right not to be dismissed from employment at the Agency solely because of lawful political support for and friendship with

former Governor King was clearly established at the time of Doyle's alleged constructive discharge." This analysis was and is correct—but it is not complete.

As the defendants now carefully point out, while the right of employees in routine or ministerial functions to be free of politically-motivated discharges was well established at the time of Doyle's job transfer, the scope of that right and the variety of positions to which it applies was anything but clear and, indeed, appears to have contracted as the First Circuit has broadly defined the reach of qualified immunity. In *Juarbe–Angueira v. Arias,* 831 F.2d 11, 14 (1st Cir.1987), the court stated:

> The upshot is that defendants will normally enjoy qualified immunity from damage liability in upper-level, managerial-type job dismissal cases, cases where the jobs in question are not purely technical or scientific in nature. This court said in *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255 (1st Cir.1987) that a defendant enjoys "qualified immunity" as long as the job *"potentially* concerns matters of partisan political interest and involved at least a *modicum* of policymaking responsibility, access to confidential information, *or* official communication."

831 F.2d at 14 (quoting in part *Mendez–Palou,* 813 F.2d at 1259) (emphasis supplied in *Arias* ). The First Circuit has thus ruled that qualified immunity is appropriate in a broad array of discharge cases. *See, e.g., Bonilla v. Nazario,* 843 F.2d 34 (1st Cir.1988) (the discharge of regional managers of the Puerto Rico Automobile Accident Compensation Administration); *Alvarado–Cordero v. Hernandez,* 837 F.2d 26 (1st Cir.1988) (the discharge of the special assistant to the executive director of the Puerto Rico Highway Authority); *Nunez v. Izquierdo–Mora,* 834 F.2d 19 (1st Cir.1987) (the discharge of the auxiliary director of fiscal resources of the Health Facilities and Services Administration ["HFSA"], the special assistant to the Secretary of Health, and the special assistant

---

**4.** The record of undisputed facts on which this renewed motion is based was developed by the

Court at the pre-trial conference held pursuant to Fed.R.Civ.P. 16.

to the executive director of the HFSA); *Juarbe–Angueira,* 831 F.2d at 16 (the discharge of a regional director of the Puerto Rico Building Authority).

Having reviewed this carefully constructed and now extensive body of law, this Court rules as matter of law that, while it was well known at the time of Doyle's job transfer that politically-motivated discharges of lower level employees violated their First Amendment rights, it was not well understood at all—nor could it reasonably have been—that such constitutionally-based job protection extended to one in Mr. Doyle's position as he was striving to carry it out. Indeed, even on this present record, the resolution of that issue is a nicely balanced question. Therefore, because the defendants herein could not reasonably have understood that their conduct, even if politically motivated, violated Doyle's civil rights, they enjoy immunity from liability for damages, and the claims against them under 42 U.S.C. sec. 1983 must be dismissed.

Doyle also seeks a declaration of rights, evidently hoping to establish that his job transfer was politically motivated even if he fails to recover monetarily. Such would be an overbroad interpretation of this Court's limited function under the case or controversy clause of the Constitution. *See Green v. Lehman,* 744 F.2d 1049, 1052–54 (4th Cir.1984); *McKee v. Turner,* 491 F.2d 1106, 1107 (9th Cir.1974). The foregoing is the full declaration of rights to which Doyle is entitled. That is, in light of the foregoing analysis and the earlier opinions in this case, the Court concludes that Doyle has no right to recover damages from any of these defendants. That said, the Court need not—and therefore should not—concern itself with whether Doyle's job transfer was in fact politically motivated.

The resolution of the federal claims reached herein prior to trial warrants dismissal of the pendant state claims without prejudice. *See Clark v. Taylor,* 710 F.2d 4, 11–12 (1st Cir.1983).

In view of the foregoing, therefore, this Court declares by way of summary judgment that the defendants are immune from Doyle's action for damages on the ground that, at the time of Doyle's job transfer, it could not reasonably have been ascertained whether his position, in light of the manner in which he exercised it, was protected against politically-motivated job actions by the First Amendment. His claims under federal law against these defendants are therefore dismissed and judgment will enter for the defendants thereon. The pendant state claims are dismissed without prejudice.