UNITED STATES of America, ex rel. K
& R LIMITED PARTNERSHIP
Plaintiffs,

v.

MASSACHUSETTS HOUSING
FINANCE AGENCY
Defendant,

No. CIV. A. 99–1343(RCL).

United States District Court,
District of Columbia.

July 30, 2001.

Carl A.S. Coan, Jr., Carl A.S. Coan, III, Coan & Lyons, Washington, DC, for Plaintiffs.

Michael J. Tuteur, Lawrence M. Kraus, Epstein Becker & Green, P.C., Boston, MA, Stuart M. Gerson, Epstein Becker & Green, P.C., Washington, DC, for Defendant.

David W. Ogden, Assistant Attorney General, Michael F. Hertz, Steven D. Altman, Helen A. Gaebler, Attorneys, Civil Division, U.S. Department of Justice, Washington, DC, Wilma A. Lewis, United States Attorney, Mark E. Nagle, Assistant United States Attorney, Lydia Kay Griggsby, Assistant U.S. Attorney, Washington, DC, for Government, Amicus Curiae Brief Submitted.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the court upon a motion by the Massachusetts Housing Finance Agency ("MHFA") to dismiss K & R Limited Partnership's ("K & R") *qui tam* complaint for failure to state a claim upon which relief can be granted. For the following reasons, the Agency's motion shall be denied.

## I. FACTS

The MHFA is an entity established by the Massachusetts Legislature in 1966 under Chapter 708 of the Massachusetts General Laws. The Agency's purpose is to "raise funds from private investors in

order to make low interest rate funds available for the acquisition, construction, adaptation and rehabilitation of housing designed to meet the needs of physically or mentally handicapped individuals and their families, insure residential or construction or permanent or rehabilitation loans for community based residences, and provide technical assistance to low income persons and families applying for residential loans and to sponsors of community based residences." Mass.Gen. Laws ch. 23A App. § 1–2 (2000). K & R is a Massachusetts limited partnership organized under the laws of the Commonwealth.

On March 27, 1999, K & R filed a complaint under seal pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730, *et seq.*, (the "FCA") alleging that the MHFA submitted false claims for payment to the United States Department of Housing and Urban Development ("HUD") each month beginning in April, 1993. Specifically, K & R asserts that the MHFA never lowered the amount it submitted to HUD for monthly interest reduction payments for 66 separate housing projects, even after lower interest bonds decreased the monthly mortgage payments that the MHFA was required to make on the projects. After investigating the contentions found in K & R's complaint, the United States' filed a Notice of Election to Decline Intervention in the proceeding against the MHFA. On April 12, 2000, this Court entered an order noting the Government's decision.

On June 19, 2000, in accordance with the Government's request, K & R served its complaint upon the MHFA. Subsequently, on September 14, 2000, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the MHFA filed a motion to dismiss K & R's complaint for failure to state a claim upon which relief can be granted.

This court today denies the MHFA's motion.

## II  DISCUSSION

### A.  Issues Presented

The MHFA argues that K & R's complaint should be dismissed for three reasons. First, the MHFA holds that as a state agency it is not a "person" subject to liability under the FCA. Second, the MHFA claims that, as a governmental entity, it is presumptively immune from the punitive damages mandated by the FCA. Third, the MHFA contends that the *qui tam* provisions of the FCA, which allowed K & R to bring its complaint against the Agency, violates the separation of powers doctrine.

### B.  Standard of Review

If a plaintiff has failed "to state a claim upon which relief can be granted," a court may grant a defendant's motion to dismiss. Fed.R.Civ.P. 12(b)(6); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). In evaluating a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Wiggins v. Hitchens,* 853 F.Supp. 505, 508 n. 1 (D.D.C.1994) (citing 2A Moore's Federal Practice, § 12.07, at 63 (2d ed.1986) (footnote omitted); *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987)).

## C. The MHFA is a "Person" Under the FCA.

The FCA allows a private party to bring a *qui tam* civil action against "[a]ny person who...knowingly presents, or causes to be presented, to an officer or employee of the United States Government...a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). In *Vermont Agency of Natural Resources v. U.S., ex rel. Stevens,* the Supreme Court conclusively determined, after a review of the historical background and the text of the statute, that "the False Claims Act does not subject a State (or state agency) to liability." 529 U.S. 765, 788, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In its motion, the MHFA asserts that K & R's complaint should be dismissed, because it is a "state agency" free from liability under the FCA. This Court disagrees.

While this Court agrees with the MHFA that an Eleventh Amendment analysis is not needed to determine if States and state agencies are beyond the scope of the FCA, this Court does believe that a determination of whether the MHFA is an entity covered by Eleventh Amendment immunity is not only justified, but is also proper in light of the Supreme Court's reasoning in *Stevens.* In that case, as part of its analysis for determining what entities are liable under the FCA, the Supreme Court relied on the "longstanding presumption that 'person' does not include the sovereign." *Id.* at 780, 120 S.Ct. 1858. Because "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today," *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), it can be deduced that those state entities that do not qualify for sovereign immunity are not a component of the "sovereign" that the Supreme Court excludes from liability under the FCA in *Stevens.* Therefore, an Eleventh Amendment analysis must ensue.

The Eleventh Amendment extends sovereign immunity to the States, but the immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State. *Alden v. Maine,* 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (*citing Mt. Healthy City Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). A number of factors support a categorization of the MHFA as an "arm" of the Commonwealth of Massachusetts. First, the MHFA charter describes the Agency as a "public instrumentality" performing an "essential public function." Mass.Gen.Laws ch. 23A App. § 1–3 (2000). Second, the governing body of the MHFA consists of "the director of housing and community development or his designated representative and the secretary of administration and finance or his designated representative, *ex effaces,* and seven persons to be appointed by the governor." *Id.* Third, "the agency has not been separately incorporated.." *Doyle v. Dukakis,* 687 F.Supp. 18, 19 (D.Mass. 1988). Fourth, "the Agency pays no sales tax." *Id.* And fifth, "the Agency's bonds are exempt from State and federal taxes." *Id.*

Other factors weigh against classifying the MHFA as an "arm of the state." First, the MHFA's charter explains that it is not "subject to the supervision or control of any executive office, department, division, commission, board, bureau or agency except to the extent and in the manner provided by law." Mass.Gen.Laws ch. 23A App. § 1–3 (2000). Second, the MHFA has the power to "[s]ue and be

sued in its own name," *Id.* at 1–4, "[m]ake and execute contracts," *Id.*, "[a]quire real property," *Id.*, "[a]ppear in its own behalf before boards, commissions, departments or other agencies of government, municipal, state or federal," *Id.*, and "[a]quire, hold and dispose of personal and real property for its corporate purposes," *Id.* Third, the Agency exercises "largely autonomous control over its operations." *Doyle*, 687 F.Supp. at 19. Fourth, "the bulk of its activities are not unlike those of a bank—for example, acting as a house mortgagee, and assisting private homeowners and developers in constructing low income housing—and thus is proprietary in nature." *See Id.* (comparing *Ainsworth Aristocrat Intern. Pty. Ltd. v. Tourism Co. of Com. of Puerto Rico*, 818 F.2d 1034, 1037–1038 (1st Cir.1987) [determining that similar factors pointed toward the conclusion that an agency is not an arm of the state] ). Fifth, "the Agency does not receive any direct appropriation of public funds." Burbine Affidavit ¶ 12. And sixth, "the full faith and credit of the Commonwealth is not pledged to the repayment of bonds which MHFA issues." *Id.* at ¶ 9.

█ With this split in evidence as to whether sovereign immunity should be extended to the MHFA, this Court turns to the Supreme Courts's decision in *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), for guidance. In *Hess*, the Court explained that "when indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide." *Id.* at 47, 115 S.Ct. 394. The first of the two reasons is to protect the integrity of the state within the federal system. *See Id.* This Court does not believe that suit against the MHFA in federal court to determine whether the Agency, on its own accord, submitted false claims for payment to a

federal program insults the dignity of the Commonwealth of Massachusetts.

█ The second reason for the Eleventh Amendment is to prevent an award of damages against a governmental entity from depleting a State's treasury. Consequently, this consideration has led Courts of Appeals to recognize "the vulnerability of the State's purse as the most salient factor in Eleventh Amendment determinations." *Id.* at 47, 115 S.Ct. 394. In this case, the MHFA "raises revenue to finance its lending operations through the sale of tax exempt bonds and notes to the general public." *Doyle v. Dukakis*, 634 F.Supp. 1441, 1445–1446 (D.Mass.1986). "Thus from all appearances any judgment will be satisfied by the Agency's own treasury." *Doyle*, 687 F.Supp. at 19. Because of the structure and nature of the MHFA's functions, the Agency is not an "arm of the state" to which sovereign immunity should be extended. Consequently, in accordance with the Supreme Court's reasoning in *Stevens*, the MHFA cannot be deemed a "state agency" free from liability under the FCA.

Moreover, various reports produced by the Commonwealth of Massachusetts refrain from identifying the MHFA as a "state agency." The organization chart of the Massachusetts Government presented on page 17 of the "Statutory Basis Financial Report" for the fiscal year ending on June 30, 1999, does not include the MHFA in its list of "state agencies." K & R Exhibit A. And the "Fiscal Year 1999 Comprehensive Annual Financial Report" of Massachusetts openly states, when referring to the MHFA, that "the Commonwealth is responsible for appointing a voting majority of the members of each entity's board, but the Commonwealth's accountability does not extend beyond the appointments." K & R Exhibit B at 56. It appears to this Court

that Massachusetts does not view the MHFA as a "state agency."

Furthermore, in the past, the MHFA has contradicted its current contention that it is a "state agency." In *Doyle v. Dukakis*, 634 F.Supp. 1441, 1445–1446 (D.Mass.1986), the MHFA argued that it was "not a public agency but rather a hybrid, quasi-public corporate entity with substantial private-sector functions, organized pursuant to Mass. Gen. Laws ch. 23A App," and that the bonds and notes it submits "are not debts of the Commonwealth." In light of these circumstances, the MHFA is a "person" that can be held liable under the False Claims Act.

**D. The MHFA is not Immune as a Result of the Nature of the Damages Awarded by the False Claims Act.**

■ The MHFA next argues that K & R's complaint should be dismissed as a result of the Supreme Court's determination in *Stevens* that the civil penalties and treble damages awarded under the FCA are "essentially punitive in nature" and "inconsistent with state qui tam liability in light of the presumption against imposition of punitive damages on government entities" 529 U.S. at 784–785, 120 S.Ct. 1858 (*citing Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). This Court disagrees.

In *Stevens*, the Supreme Court conclusively determined that the state and state agencies are not "persons" who can be held liable under the FCA. As discussed above, the MHFA is not a "state agency" of the Commonwealth of Massachusetts. If this Court were to now dismiss K & R's complaint on the grounds that the MHFA is immune from the damages awarded under the FCA, it would, in effect, accept a loophole in the Act that would allow entities with some connection to the state, but that are considered "persons" subject to

suit under the FCA, to escape liability for any false claims made to the federal government. Although Congress has made the damages awarded under the current version of the FCA punitive in nature, this Court does not believe that in doing so Congress intended to create such a gap in the statute.

Moreover, as discussed above, the MHFA will use the money amassed in its own treasury to satisfy any award of damages in this case. Therefore, the Commonwealth of Massachusetts will not be required to open its own purse to satisfy an adverse judgment against the MHFA. While there is a potential that the citizens of Massachusetts may have to endure a higher cost of borrowing from the MHFA if the Agency is required to pay the damages awarded under the FCA, if entities like the MHFA are allowed to submit false claims for payment to the federal government without the threat of penalty, all citizens of the United States will be deprived of the monies used to satisfy the deceitful or erroneous demands that will amass.

Furthermore, the Massachusetts Legislature never attempted to limit the damages that can be awarded against the MHFA when the Agency engages in activities such as submitting false claims for payment to HUD. The MHFA's charter states that:

> The MHFA shall be liable on all claims made as a result of the activities, whether ministerial or discretionary, of any member, officer, or employee of the MHFA acting as such, except for willful dishonesty or intentional violation of the law, in the same manner and to the same extent as a private person under like circumstances; provided, however, that the MHFA shall not be liable to levy of execution on any real or personal property to satisfy judgment, for inter-

est prior to judgment, for punitive damages or for any amount in excess of one hundred thousand dollars.

Mass.Gen.Laws ch. 23A App. § 1–16A (2000). While the Legislature specifically limits the damages awarded against the Agency when its members, officers, and employees engage in some activities, it prescribes no such limit for when such a party engages in "willful dishonesty or intentional violation of the law." Presenting the federal government with false claims for payment undoubtedly represents an intentional violation of the FCA. Therefore, the MHFA's liability is not limited by the treble damages and civil penalties awarded under the current version of the Act. As a result of these factors, the MHFA is not immune from the damages awarded under the FCA.

### E. The FCA does not Violate the Separation of Powers Doctrine.

The MHFA also contends that K & R's complaint should be dismissed, because the *qui tam* provisions of the FCA violate the separation of powers doctrine under the Take Care Clause of Article II, Section 3 of the Constitution and the Appointments Clause of Article II, Section 2 of the Constitution. The Agency bases its argument on the reasoning found in *Riley v. St. Luke's Episcopal Hospital,* 196 F.3d 514 (5th Cir.1999), *reh'g en Banc granted,* 196 F.3d 561 (5th Cir.1999). However, after a hearing *en banc* specifically addressed at the same constitutional issues presented by the Agency, the Fifth Circuit reassessed its position and concluded that allowing a private citizen to "pursue *qui tam* litigation under the FCA, whether the government chooses to intervene or does not choose, does not interfere with the President's constitutionally assigned functions under Article II's Take Care Clause," 252 F.3d 749, 753 (5th Cir.2001), and that "the FCA's qui tam provisions do not vio-

late the Appointments Clause." *Id.* at 758; *See also United States ex rel. Schumer v. Hughes Aircraft Co.,* 63 F.3d 1512, 1520–21 (9th Cir.1995), *cert. granted in part,* 519 U.S. 926, 117 S.Ct. 293, 136 L.Ed.2d 212 (1996) (rejecting argument that the qui tam provisions are unconstitutional because they violate the doctrine of separation of powers and the Appointment Clause); *U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.,* 41 F.3d 1032, 1041 (6th Cir.1994) (upholding the constitutionality of the federal qui tam laws). This Court agrees.

The Take Care Clause of the Constitution, Art. II, § 3, states that the President "shall take Care that the Laws be faithfully executed." This Clause entrusts the power to enforce the laws of the United States in the hands of the Executive Branch. *See Springer v. Government of Philippine Islands,* 277 U.S. 189, 202, 48 S.Ct. 480, 72 L.Ed. 845 (1928). In this case, the separation of powers doctrine would be violated if Congress, by allowing private relators to bring *qui tam* suits under the FCA, diminished or altered the power assigned to the Executive under the Take Care Clause. *Cf. Clinton v. Jones,* 520 U.S. 681, 701, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). This has not occurred.

The FCA provides a number of methods for the Executive to exert control over a *qui tam* action. First, the Act allows the Government to intervene and proceed with an action brought by the relator within 60 days after it receives both the complaint and the material evidence and information involved, 31 U.S.C. § 3730(b)(2), or if good cause is shown, at a subsequent date. 31 U.S.C. § 3730(c)(3). If the Government does decide to intervene, it has the "primary responsibility for prosecuting the action and shall not be bound by an act of the person bringing the action." 31 U.S.C.

§ 3730(c)(1). Second, the Act enables the Government, upon intervention, to dismiss the *qui tam* action "notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). Third, the Government is able to intervene and settle the *qui tam* action "notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). Fourth, even if the Government does not intervene, it may request that it "be served with copies of all pleadings filed in the action" and "be supplied with copies of all deposition transcripts." 31 U.S.C. § 3730(c)(3). Fifth, "[w]hether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery." 31 U.S.C. § 3730(c)(4). And sixth, the Government retains the ability to "elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty." 31 U.S.C. § 3730(c)(5).

Thus, contrary to the MHFA's assertions, the FCA protects the Executive Branch's constitutionally derived power to assure that the laws of the United States are "faithfully executed." By simply electing to intervene in a *qui tam* action, the Government, in effect, takes the reins of the case. It directs the prosecution and holds the power to terminate the case by dismissal or settlement. And if the Government does not opt to initially intervene, the FCA allows it to monitor the *qui tam* action by obtaining discovery until a good cause arises that may necessitate a later intervention.

Moreover, although the Supreme Court's decision in *Morrison v. Olson*, 487 U.S. 654, 655, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), "examined similar constitutional questions with regard to the Executive's duties under Article II, it is not relevant to the present discussion of qui tam relators." The *Morrison* decision examined the relationship between the separation of powers doctrine and the provisions of the Ethics in Government Act, 28 U.S.C.A. § 591 et seq. (the "EGA"), which allowed for criminal prosecution duties to be delegated to a judicially appointed independent counsel who acts on behalf of the United States. To the contrary, the *qui tam* provisions of the FCA allow a private relator to bring a civil action in the name of the United States. Because these Acts "involve two different types of lawsuits, the Executive must wield two different types of control in order to ensure that its constitutional duties under Article II are not impinged." *Morrison*, 487 U.S. at 655, 108 S.Ct. 2597. In *Morrison*, the Supreme Court upheld the independent counsel provisions of the EGA despite their effect on such a fundamental aspect of the Executive's power to assure that the laws are faithfully executed, the ability to execute criminal prosecutions. As a result, the FCA's *quit tam* provisions, which allow relators to only bring civil actions that the Government has the option of controlling, surely do not violate the Take Care Clause of the Constitution. *See Id.* at 755–756, 108 S.Ct. 2641.

Furthermore, the *qui tam* provisions of the FCA do not violate the Constitution's Appointments Clause, because a relator cannot be deemed an "officer" of the United States. "Supreme Court precedent has

established that the constitutional definition of an 'officer' encompasses, at a minimum, a continuing and formalized relationship of employment with the United States Government." *Riley*, 252 F.3d at 757 *(citing Auffmordt v. Hedden*, 137 U.S. 310, 327, 11 S.Ct. 103, 34 L.Ed. 674 (1890); *United States v. Germaine*, 99 U.S. 508, 511–12, 9 Otto 508, 25 L.Ed. 482 (1878)). A private entity, like K & R, which acts as a relator under the FCA, has no such association with the Government. It has not been hired or appointed to an established office by the government. It does not receive a salary from the government. Nor is it supervised by the Government. Therefore, a *qui tam* relator is not an "officer" that must be appointed by the Executive Branch if the Appointments Clause is not to be offended.

In addition, federal statutes allowing private citizens to bring suit to uphold the laws of the United States are commonplace in our society. *See, e.g.* Clean Water Act, 33 U.S.C. § 1365(a); Federal Election Campaign Act, 2 U.S.C. § 437g(a)(1); Endangered Species Act, 16 U.S.C. § 1540(g). When acting in such a manner, these citizens are not transformed into "officers" of the United States. *Qui Tam* relators serve a similar function, and therefore, need not be deemed "officers" to litigate on behalf of the United States. In light of these circumstances, the *qui tam* provisions of the FCA do not unconstitutionally violate the separation of powers doctrine.

## III   CONCLUSION

This court finds: 1) that the MHFA is a "Person" liable under the FCA; 2) that the MHFA is not immune from liability under the FCA as a result of the nature of damages awarded under the Act; and 3) that the *qui tam* provisions of the FCA violate neither the Take Care Clause nor the Appointments Clause of the Constitu-

tion. Accordingly, the court shall deny the MHFA's motion to dismiss K & R Limited Partnership's ("K & R") *qui tam* complaint for failure to state a claim upon which relief can be granted.

A separate order shall issue this date.